[L. A. No. 3976.  In Bank.—October 19, 1917.]

FRANK McCANN, as Administrator, etc., Appellant, v.
CHILDREN'S HOME SOCIETY OF CALIFORNIA
(a Corporation), et al., Respondents.

Corporations—Defects in Incorporation—Corporation de Facto.—
The exercise of the powers of a corporation creates a *de facto*
corporation.

Id.—Corporation de Facto — Collateral Attack on Validity.—
Where there is a *de facto* corporation, the validity of its organiza-
tion cannot be inquired into collaterally in a private suit but only
by the state.

Id.—Estoppel—Deed to Corporation—Estoppel of Grantor to Deny
Incorporation.—One who makes a deed to a grantee described as
a corporation is estopped as against it to deny that it has been
legally organized, and the administrator of the grantor's estate
cannot avail himself of any defects in the attempted formation
of the corporation.

Pleadings—Finding in Accordance With Allegation of Complaint
—Conclusiveness on Appeal.—Where an allegation of a com-
plaint is denied by the answer and the fact is found by the court
as alleged in the complaint, the plaintiff is in no position to com-
plain of the action of the court, and on appeal the fact so found
must be taken to be established.

Corporations—Failure to File Articles in County Where Property Held—Right to Defend Action.—Under section ¯299 of the Civil Code, requiring every corporation to file a copy of its articles of incorporation in the county where property held by it is located, and declaring that any corporation failing to comply cannot maintain or defend any action or proceeding in relation to such property until such articles of incorporation are filed, if a corporation which has failed to comply with this section before the commencement of an action against it files the certified copy of its articles before it makes answer, its right to defend the action is not affected.

Charitable Corporations—Right to Hold Real Property—Who May Attack.—Questions as to the necessity for the holding by a charitable corporation of more real estate than necessary for its business or the existence of conditions authorizing it to hold real estate in ·excess of certain limits fixed by legislation cannot be raised in a litigation between the corporation and private persons; it is against the policy of the law to permit such inquiry to be made except in proceedings instituted by the state against the corporation.

Corporations — Defective Incorporation — New Incorporation — Identity of Organizations.—Where an attempt to organize a corporation was defective, but the incorporation exercised the powers of a corporation and subsequently reincorporated under the same name, the new corporation was a continuation of the former *de facto* corporation and the two organizations were really identical.

Deed—Action to Set Aside—Insanity—Appeal—Conflict of Evidence.—Where in an action to set aside a deed on the ground of unsoundness of mind of a deceased grantor there was abundant evidence that he was of sound mind, and this was met by contrary evidence, the case presents a substantial conflict of evidence, and the appellate court is not authorized to question the finding of the court below.

Appeal — Objections to Evidence — Expert Evidence — Particular Ground of Objection not Stated—Harmless Error.—Where in an action to set aside a deed on the ground of a deceased grantor's unsoundness of mind a physician on the trial was allowed, over objection, to state that he had heard or read all the testimony, and in his opinion the grantor was of unsound mind, although this was not a proper method of eliciting the opinion of an expert, that particular objection not having been made but the objection having been made on general grounds, the error did not call for a reversal, especially as an examination of the record did not show that any substantial prejudice could have been worked from the form of the question to the witness.

Evidence — Expert Witness — Hypothetical Question — Cross-Examination.—Reading to an expert witness on cross-examination the purported answer to a hypothetical question of another expert wit-

ness on a former trial and asking whether the answer given by such former witness was correct was manifestly improper, and an objection to the question was properly sustained.

APPEAL from a judgment of the Superior Court of Santa Barbara County, and from an order denying a motion for a new trial.   Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

John T. Ryan, and Joseph Scott, for Appellant.

A. E. Merrill, Will D. Gould, and Wm. G. Griffith, for Respondents.

SLOSS, J.—The administrator of the estate of Electus Serls, deceased, brought this action to set aside certain deeds made by his intestate, and to obtain a decree that those claiming under said deeds have no title to the property therein described.

On October 28, 1904, Electus Serls was the owner of a tract of land near Lompoc, Santa Barbara County, containing eighty acres.   On that day he made and delivered a deed, purporting to convey said tract to the defendant, Children's Home Society of California, reserving to himself a life interest in the property.   There was no money consideration. This deed described the grantee as "a corporation duly organized under the laws of the State of California."   The said Children's Home Society of California was a charitable or benevolent organization, carrying on the work of finding homes for dependent children and supervising the care of the children so placed.   In December, 1891, the persons conducting this organization had attempted to form a corporation under the provisions of title XII of part IV of division first of the Civil Code (sec. 593 et seq.)   Articles of incorporation were filed in the office of the county clerk of the county of Los Angeles, a copy thereof filed in the office of the Secretary of State, and a certificate of incorporation issued.   Thereupon said Children's Home Society of California carried on business as a corporation until 1908, when it was discovered that the original filing of articles was invalid for want of the verification required by section 594 of the Civil Code. (*Wall* v. *Mines,* 130 Cal. 27, [62 Pac. 386].)   Thereupon the per-

sons then conducting the affairs of the society filed new articles of incorporation, and took the other necessary steps to form a corporation, under the name of Children's Home Society of California. On April 18, 1908, Serls executed two additional deeds, the one, covering fifty acres of his farm, to the corporation which had just been organized, and the other, covering the remaining thirty acres, to Julius A. Brown. Each of these deeds, like the one of 1904, reserved a life interest to the grantor. Brown, the grantee of the thirty acres, was the president of the Children's Home Society, and he took the conveyance for the benefit of the society. The land was thus conveyed in separate parcels because of the provisions of section 595 of the Civil Code, limiting the quantity of land to be owned or held by religious, social, and benevolent corporations. The defendant, J. W. De Wolfe, claimed as grantee of Children's Home Society of California and of Julius A. Brown.

The complaint, after setting up the facts surrounding the original attempt to incorporate, and the later incorporation, charged that a certified copy of the articles of incorporation had not been filed in the county of Santa Barbara, where the property was located, as required by section 299 of the Civil Code. It further alleged that, at the time of making said deeds, Serls was of unsound mind, and that the execution of each of said deeds was procured by the exercise of undue influence upon him.

The court found against the allegations of incompetency and undue influence. It found that, from the time of the filing of the certified copy of the first articles of incorporation, in December, 1891, and the issuance of the certificate of incorporation, said association had exercised all the powers of a corporation under the laws of the state of California, and that, on March 23, 1911 (after the commencement of this action), a duly certified copy of said articles of incorporation was filed in the office of the county clerk of the county of Santa Barbara. It found that the second incorporation took place as hereinbefore recited, and that a copy of said second articles was duly filed in the office of the county clerk of Santa Barbara County on March 23, 1911. The findings set forth the making of the three deeds here assailed, and that the Children's Home Society of California and Julius A. Brown, on June 17, 1910, executed to J. W. De Wolfe con-

veyances of the fifty and thirty acre tracts attempted to be conveyed by Serls in 1908. It was further found that the two deeds given by Serls in 1908 were ineffectual because of the prior conveyance of all of said land by the deed of October 28, 1904. On these findings the court gave judgment that plaintiff take nothing by the action, that J. W. De Wolfe is the owner of said real property, and that the plaintiff has no right, title, or interest therein.

The plaintiff appeals from the judgment and from an order denying his motion for a new trial.

If the court was right in its conclusion that Serls had divested himself of all interest in the property (except the life estate, which terminated on his death) by the conveyance of October 28, 1904, there is, of course, no occasion to inquire whether the plaintiff showed any good ground for attacking the deeds of 1908, or the subsequent deeds to De Wolfe. The plaintiff, as administrator, stands in no better position than Serls himself would have occupied. It being established that the estate has no interest in the property, the appellant is not concerned with the correctness of the decree determining the title to be in the respondent De Wolfe.

We pass, for the moment, the questions arising on the charges of incompetency and undue influence. There is no merit in the appellant's contention that the defect in the original attempt at incorporation prevented the deed of 1904 from having operative effect. It may be conceded that at the date of this conveyance Children's Home Society of California was not a lawful or *de jure* corporation. (*Wall* v. *Mines,* 130 Cal. 27, [62 Pac. 386].) There can be no doubt, however, and, indeed, the appellant concedes, that the exercise of the powers of a corporation created a *de facto* corporation. It is thoroughly settled that where there is a *de facto* corporation, the validity of its organization cannot be inquired into collaterally in a private suit, but may be questioned only by the state. (Civ. Code, sec. 358; *Spring Valley Water Wks.* v. *San Francisco,* 22 Cal. 434; *Bakersfield T. H. Assn* v. *Chester,* 55 Cal. 98; *Weaverville W. R. Co.* v. *Board of Supervisors,* 64 Cal. 69, [28 Pac. 496] ; *Lakeside Ditch Co.* v. *Crane,* 80 Cal. 181, [22 Pac. 76] ; *Los Angeles Holiness Band* v. *Spires,* 126 Cal. 541, [58 Pac. 1049] ; *Robinson* v. *Blood,* 151 Cal. 504, [91 Pac. 258].) Furthermore, the conveyance made by Serls in 1904 described the grantee as a corporation duly organized.

It is established law that "one who deals with a corporation·as
existing in fact is estopped to deny as against the corporation
that it has been legally organized." (*Close* v. *Glenwood Ceme-
tery,* 107 U. S. 466, 477, [27 L. Ed. 408, 2 Sup. Ct. Rep. 267] ;
*Fresno Canal Co.* v. *Warner,* 72 Cal. 379, 383, [14 Pac. 37] ;
*Yancy* v. *Morton,* 94 Cal. 558, [29 Pac. 1111] ; *Camp* v.
*Land,* 122 Cal. 167, [54 Pac. 839] ; 10 Cyc. 245; 2 Cook on
Corporations, 7th ed., sec. 637.) Accordingly, plaintiff can-
not avail himself of any defects in the attempted formation
of the corporation with which he dealt.

It is contended, next, that upon the filing of the new arti-
cles of incorporation in 1908, the activities of the former
organization ceased. Several conclusions are sought to be
drawn from this asserted circumstance. But, on the record
before us, we must take the fact to be contrary to appellant's
claim. The court found that the original association had
continuously, since the filing of articles in 1891, exercised all
the powers and functions of a corporation. The amended
complaint so alleged, the averment being denied by the an-
swer. The finding, therefore, was in support of the appel-
lant's own allegation, and he is in no position to complain of
the action of the court in finding that the fact was as averred
by him. (*Riverside Land Co.* v. *Jensen,* 73 Cal. 550, [15
Pac. 131] ; *Eaton* v. *Rocca,* 75 Cal. 93, [16 Pac. 529] ; *Samon-
set* v. *Mesnager,* 108 Cal. 354, [41 Pac. 337].) It must be
taken as established, for the purposes of this appeal, that the
grantee named in the deed of 1904 was continuing to act as a
corporation up to the time this litigation was instituted. We
do not intend to intimate that, even if it had ceased to per-
form corporate functions in 1908, its status as a *de facto*
corporation could, by reason of that fact alone, be questioned
by anyone except the state. (See *Robinson* v. *Blood,* 151
Cal. 504, [91 Pac. 258].)

The right of the *de facto* corporation to defend this litiga-
tion is assailed upon the ground of its failure to comply with
the provision 'of section 299 of the Civil Code, requiring
every corporation to file a copy of its articles of incorporation
in the county in which property held by it is located. The
section declares that any corporation failing to comply with
any of its provisions "cannot maintain or defend any action
or proceeding in relation to such property, . . . until such
articles of incorporation . . . are filed." It appears that a

copy of the articles was filed in the office of the county clerk of Santa Barbara County on March 23, 1911. This was after the filing of the amended complaint in this action but prior to the filing of the answer thereto. Assuming that section 299 has any application to the case of a *de facto* corporation, which (as appellant claims is the case here) has never filed valid articles of incorporation, we think the filing on March 23, 1911, was sufficient to authorize the defense of this action. In cases where the corporation is plaintiff, it is settled that a filing of a copy of the articles of incorporation after the commencement of the suit, and before the filing of a plea directed to this defect, will entitle the corporation to maintain the action. (*California Sav. & Loan Soc.* v. *Harris,* 111 Cal. 133, [43 Pac. 525] ; *Ward Land etc. Co.* v. *Mapes,* 147 Cal. 747, [82 Pac. 426].) Upon like grounds, it should be held that where the certified copy is filed before the defendant makes answer, the right to defend the action is not affected. As was said in the Harris case, *supra:* "The failure to file this certified copy does not impose upon the corporation a loss or forfeiture of its property, or impair or deprive it of any cause of action or defense it may have in reference to such property." The provision against maintaining or defending an action was enacted, says the court in the same case, "for the purpose of enforcing a compliance by the plaintiff with a statutory requirement. It is limited by its terms 'until' such compliance has been had, and when its object has been effected, its terms prescribing a penalty should be strictly construed and in favor of the corporation."

The point that the corporation was without authority to take and hold the land described in the deed of 1904 is not good. Under section 595 of the Civil Code, corporations of the kind which the *de facto* corporation assumed to be are empowered to hold property "acquired in any manner," but are prohibited from holding more real estate than may be necessary for the business and objects of the association, not exceeding six lots in any city or town, nor more than fifty acres in the country. There is a proviso that, in certain contingencies, such corporation may own and possess up to one hundred and sixty acres of land in the country. The appellant claims that the land conveyed by his intestate was not necessary for the purposes of the corporation, and that the conditions authorizing a holding in excess of fifty acres

did not exist. But these questions cannot be raised in a litigation between the corporation and private persons. The statute does not declare that any conveyance of land in excess of the statutory limit shall be void, nor does it prescribe any penalty for a violation of its provisions. Although the deed described a tract of eighty acres, it did not show upon its face that it conveyed a greater amount of land than the corporation was authorized to take. Under some circumstances, the holding might have extended to 160 acres, and evidence *aliunde* was required to show that these conditions did not exist. It is against the policy of the law to permit such inquiry to be made except in proceedings instituted by the state against the corporation. "Although a corporation may be disabled or forbidden from holding land at all, or from holding land except for particular purposes, or from holding land beyond a prescribed limit, yet if it does hold land in the face of such disabilities or prohibitions, its title will be good except as against the state alone, and it will be deemed to have a good title until its title is invalidated in a direct proceeding instituted by the state for that purpose." (5 Thompson on Corporations, sec. 5795; 3 Cook on Corporations, 7th ed., sec. 694; 7 R. C. L. 567.) While there are decisions of contrary import (see, for example, *Matter of McGraw*, 111 N. Y. 66, [2 L. R. A. 387, 19 N. E. 233]), the great preponderance of authority supports the rule as just declared. A few citations will suffice. (*Union Nat. Bk.* v. *Matthews*, 98 U. S. 621, [25 L. Ed. 188]; *Cowell* v. *Colorado Springs Co.*, 100 U. S. 55, [25 L. Ed. 547]; *Jones* v. *Habersham*, 107 U. S. 174, [27 L. Ed. 401, 2 Sup. Ct. Rep. 336]; *Reynolds* v. *Crawfordsville First Nat. Bk.*, 112 U. S. 405, [28 L. Ed. 733, 5 Sup. Ct. Rep. 213]; *Fritts* v. *Palmer*, 132 U. S. 282, [33 L. Ed. 317, 10 Sup. Ct. Rep. 93]; *American Mortgage Co.* v. *Tennille*, 87 Ga. 28, [12 L. R. A. 529, 13 S. E. 158]; *Kohlruss* v. *Zachery*, 139 Ga. 625, [46 L. R. A. (N. S.) 72, 77 S. E. 812]; *Barnes* v. *Suddard*, 117 Ill. 237, [7 N. E. 477]; *De Witt Co. Nat. Bk.* v. *Mickelberry*, 244 Ill. 77, [135 Am. St. Rep. 304, 91 N. E. 86]; *Hanson* v. *Little Sisters*, 79 Md. 434, [32 L. R. A. 293, 32 Atl. 1052]; note to *Page* v. *Heineberg*, 94 Am. Dec. 382.) A like conclusion was reached by this court in *Natoma Water & M. Co.* v. *Clarkin*, 14 Cal. 544. In deciding that case, Field, C. J., used this language, which has often been quoted: "Whether or not the premises in controversy are

necessary for those [the authorized] purposes, it is not material to inquire; that is a matter between the government and the corporation, and is of no concern to the defendants. It would lead to infinite inconveniences and embarrassments if, in suits by corporations, to recover the possession of their property, inquiries were permitted as to the necessity of such property for the purposes of their incorporation, and the title made to rest upon the existence of that necessity.'' The same reasons preclude inquiry into the question whether the corporation has met the conditions which authorize it to hold country land in excess of fifty and not more than 160 acres. Under these views, there is no occasion to consider whether section 596, relied on by respondents as fortifying their claim that title passed by the deed of 1904, is applicable to corporations of the kind here involved, or whether, as appellant urges, this section refers only to ''friendly societies and pioneer associations.''

Throughout his brief the appellant insists upon treating the organization which attempted to file articles in 1891 as an entity separate and distinct from the corporation which was formed in 1908. In discussing the legal points made, we have gone upon the assumption that this position was well founded. It is proper to say, however, that the real situation disclosed by the evidence is that the same persons who were conducting the organization from 1891 to 1908 filed articles of incorporation in the latter year for the purpose of correcting the defects in the attempted incorporation of 1891. In fact, the new corporation was a continuation of the then existing *de facto* corporation, and we are satisfied that if the question were material here, there would be no substantial difficulty in perceiving and declaring that the two organizations were in reality identical.

Having disposed of these technical objections to the right of the Children's Home Society to take title under the deed of 1904, we come to the points urged in connection with the charge of unsoundness of mind and undue influence. We shall not summarize the evidence on these issues. It is enough to say that there was abundant testimony to support the finding of the court that Serls, at the time of making his first deed, was of sound mind and capable of understanding the nature and effect of his acts and of said deed. True, the

plaintiff introduced evidence of contrary tendency. This was, however, met by contradictory evidence, so that the situation presented is simply the familiar one of a substantial conflict of evidence, in the face of which this court is not authorized to question the finding of the court below. Granting the sufficiency of the showing to support the finding of the grantor's soundness of mind, there was virtually no evidence tending to prove the exercise of undue influence.

The appellant claims that the court erred in a number of rulings on the admission and rejection of evidence. A physician, having qualified as an expert, after stating that he had heard or read all of the evidence introduced on behalf of the plaintiff, was allowed, over objection, to give his opinion that the grantor was of sound mind. It may be conceded that this is not a proper method of eliciting the opinion of an expert. (*People* v. *Le Doux,* 155 Cal. 535, 555, [102 Pac. 517].) But the particular objection which counsel now urges was not stated in the court below, the objection being on general grounds. Apart from this, we are unable to see from an examination of the record that any substantial prejudice could have been worked by the form in which the question was put to the witness. On cross-examination of the same witness, the plaintiff put to him a hypothetical question, covering about four pages of the printed record, together with a purported answer to such question covering over two pages of the record, and asked him whether the answer so given was correct. Apparently the question had been propounded to, and the answer given by, an expert witness on a former trial of the case. The counsel putting the question on this trial stated that his purpose was "to ascertain the qualifications of the witness." The court sustained an objection to the question, and we think it was right in so doing. It is difficult to see how an answer would have tended to accomplish counsel's avowed purpose. In any other aspect the question was manifestly improper, for the reason, among others, that it assumed facts not in evidence.

Various other points are made, but we think none of the rulings assailed, if erroneous, of sufficient consequence to have substantially affected the result of the trial. We shall not take the time to go into these matters in greater detail.

We find no substantial error in the record.

The judgment and the order denying a new trial are affirmed.

Shaw, J., Melvin, J., Henshaw, J., and Angellotti, C. J., concurred.

Rehearing denied.